Filed 2/24/21  S.D. v. J.M. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| S. D.,<br><br>  Appellant,<br><br>    v.<br><br>J. M.,<br><br>  Respondent. | G058090, G058529<br><br>(Super. Ct. Nos. 18P001593,<br> 17FL103055)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Andre De La Cruz, Judge.  Affirmed.

S. D. in pro. per., for Appellant.

No appearance for Respondent.

\*          \*          \*

This appeal arises from a contentious child custody dispute. The parties, whom we refer to as mother and father, have one child together (minor) and had an order in place splitting legal and physical custody. Mother filed a request for order (RFO) seeking to modify the physical custody schedule based on allegations that father was physically and/or sexually abusing minor. That allegation was *extensively* investigated and determined to be unfounded. Meanwhile, for the two months during which these investigations were pending, mother refused to relinquish minor to father's custody during his appointed times. This required father to retain an attorney and make several appearances in court. Ultimately, the court found mother's willful violation of the custody order warranted sanctions to compensate father for his legal expenses in the amount of approximately $7,400. Subsequently the court denied mother's request for a domestic violence restraining order (DVRO), finding mother's allegations were a subterfuge to gain an advantage in her effort to reduce father's custody of minor.

On appeal, mother asserts a panoply of procedural errors, all of which either lack merit or had no prejudicial effect. Accordingly, we affirm the court's orders.

FACTS

Minor was born in 2015. Mother and father were engaged at one point, but never married. Mother filed a custody case in San Diego in early 2016. Afterward, the parties reconciled for a time but permanently separated in May 2017. The San Diego case resulted in a custody order that had a graduated custody provision: the child resided primarily with mother, but when the child turned three years of age, father's physical custody time increased. That change was scheduled to occur in April 2018.

2

The events giving rise to the present appeal stem from an ex parte request for orders filed by mother in April 2018.[1]  According to mother's declaration, on April 2, 2018, she picked up minor from father.  She noticed bruises on the inside of both of minor's knees.  When she asked what happened, minor was silent, which was out of character.  Later that day, minor was sticking his fingers down his throat making himself gag.  When asked about it, minor said, "My Daddy likes it."  The declaration continues, "Our child then got on hands and knees and stated, 'My Daddy go like this' and moved his hips in back and forth motion up and down from ground to raised position, with knees bent and a quick back back and forth motion repeated.  I asked him why he would do that, he said, "'Because my Daddy goes like this,' and did the rocking hips motion on hands and knees again.  He then sat back down with legs crossed and stuck his fingers in his mouth again, and stated, 'My Daddy likes this.'"  (Boldface omitted.)  She noticed that the inside of minor's mouth was red.  She then took minor to the emergency room for an examination, though the medical report was not included in the declaration.  The declaration included several other allegations, the details of which are unimportant to this appeal, suggesting that father was a negligent parent.  The specific orders she sought were suspension of visitation to father and an expedited child custody investigation (CCI).

At the hearing the following day, the court cautioned both parents that—whether true or false—these are serious allegations that could have consequences for both parents, including consequences for the mother if the allegations turn out to be false.  On the merits, the court noted there was no documentation of the emergency room examination in the moving papers.  Mother's counsel responded that she had not received that yet, but that she had been orally informed of the findings.  The court responded, "Well, your client didn't have any problem telling me what the child said orally, so why

---

[1]        The parties moved to Orange County and the custody case was transferred to the Orange County Superior Court.

not get it all in there? I mean if the doctor said something, I would assume it would be in here." In the end, the court declined to alter the custody arrangement, but ordered a CCI. (See Fam. Code, § 3111.)

Afterward, mother flatly refused to comply with the court order maintaining the current custody schedule. She unilaterally decided father would not get custody time during the pendency of the investigation and refused to relinquish the child.

Meanwhile, the investigator interviewed both mother and father and reviewed various documents and other reports. Included among those reports was the result of an investigation by the Orange County Social Services Agency (SSA) which, after interviewing various individuals, including law enforcement and medical professionals, concluded the allegations of abuse were unfounded. SSA concluded minor was "healthy and well taken care of." The social worker also reported that a law enforcement investigation had concluded and no action would be taken. Ultimately, the investigator came to the same conclusion: "There is no evidence to substantiate the mother's concerns of child abuse." The investigator further concluded, "It is evident that each of the parties is a loving parent that is committed to being in the child's life. The undersigned commends the parties for their dedication to the child. The undersigned cautions the parties that ongoing parental conflict is not in the best interest of the child." The investigator did not recommend any change to the father's custody time, and expressed concern over mother's "poor judgment" in withholding minor from father pending the outcome of the investigation in direct violation of the court's order.

At the next hearing in late May 2018, the court ordered mother to immediately provide father with time with minor and to resume the existing custody schedule. Mother would go on to disregard that order as well.

This prompted father to file an ex parte RFO two days later, which is not in our record. That filing resulted in a stipulation, which contained an agreement to have a custody evaluator appointed pursuant to Evidence Code section 730. The stipulation also

4

provided that if mother failed to relinquish minor again, her custodial rights would be immediately suspended.  Based on that threat, mother finally complied with the order and relinquished minor to father per the custody order.  Also, there is a reference in the stipulation to the fact that father had requested sanctions in his ex parte RFO, which would be reserved for the June 29, 2018 hearing.

On June 29, 2018, the court held a hearing on father's RFO.  At that hearing, the court addressed the sanctions request mentioned in the stipulation.  The court ultimately continued the hearing on sanctions so that father's counsel could provide detailed time entries.  However, having observed mother's conduct, it found "it is more likely than not that [mother] will face sanctions due to [her] noncompliance [with court orders.]  I have accepted [father's counsel's] explanation as to why [counsel] needs an advance, and I think $2,500 is reasonable.  So I will order an advance of attorney's fees for $2,500."  The court set a deadline of paying the first installment of $1,250 within 45 days, and the remainder 45 days after that.  The court continued the RFO to October 10, 2018, to allow enough time to complete the Evidence Code section 730 evaluation (730 evaluation).

The 730 evaluation was performed by Dr. Linda Grossman, a licensed psychologist.  The evaluation was comprehensive, involving multiple interviews with the parties, psychological testing of the parties, observation of the parties with minor, interviews with 11 collateral contacts of the parties, virtual home tours, and review of myriad documents.  The resulting report was 87 pages long.

Dr. Grossman concluded that "the evidence points to no abuse having occurred."  She weighed both the evidence for, and the evidence against.

The evidence tending to show abuse included the statements the mother and her husband claim minor had made, some photographs showing bruising on minor's inner knees, and the emergency room medical report in which a doctor reported that minor said his father hit him.

5

The evidence tending to show a lack of abuse was extensive. Dr. Grossman listed the following: "CPS [Child Protective Services] investigated the case and determined that the allegation of physical/sexual abuse was Unfounded. [¶] Following mother's request for further CPS evaluation, a CPS physician reevaluated the case and substantiated the finding of Unfounded." "The sheriff's report said the child reported that he gagged himself because <u>he</u> likes it." "The Child Abuse Potential assessment instrument completed by [father] revealed that he was 'Unlikely' to perpetrate child abuse." "The Abel exam (a psychophysiological measure of potential sexual deviation), conducted by expert Veronica Thomas, Ph.D., revealed that [father] has normal sexual interests, does not have any deviant sexual fantasies or paraphilias, and does not satisfy any of the protocol's criteria for pedophilia." "The stepfather [mother's husband] opined that as a mandated reporter himself, he would not have made a CPS report, but was only concerned because of [mother's] descriptions of alleged prior sexual abuse perpetrated on her by [father]." "Dr. Drozd, the child's psychologist (and an expert in child sexual abuse) noted no signs or symptoms in the child's behavior suggestive of sexual abuse (though she did not directly assess)." "Observations of the child with the father revealed no signs of avoidance, fearfulness, or withdrawal. It was observed that the child sought physical comfort and affection from the father, and evidenced a relaxed and confident demeanor in father's presence." "Verbal reports by the child to the evaluator include statements that no one hits him or touches him in a place that makes him feel bad or sad."

Dr. Grossman also noted mother's "obsessive" behavior regarding her allegations of child abuse. "[Mother] clings to the belief of sexual abuse like a pit bull with a bone, attacking any piece of evidence or person stating otherwise." Ultimately, Dr. Grossman recommended a custody plan similar to that which was already in place.

At the hearing on October 10, 2018, which was to finally resolve mother's RFO, the court essentially adopted the custody plan recommended by Dr. Grossman.

6

At the same hearing, the court determined that the amount of sanctions against mother, which were intended to compensate father for the fees he incurred as a result of mother's willful noncompliance with court orders, was $7,399.50. As a result of mother's claim that she made only $16,000 that year, the court instituted a payment plan whereby mother would pay $40 per month until the full amount was paid off. The amount owing was to accrue interest at 10 percent per year.

Just a little over a week later, father filed his own RFO. The day after the October 10 hearing, mother moved from south Orange County to Seal Beach (which is in north Orange County) and unilaterally started the process of moving minor to a new school close to her (father, who shares legal custody, was not consulted). This move was already in the works at the time of the October 10 hearing, but mother did not mention it.

The court held a hearing on October 24, 2018, on father's RFO. Ultimately, the court made minor alterations to the custody schedule. At the hearing, mother attempted to hand the court the medical report from the emergency room visit when mother first alleged minor had been abused. She then asked the court to "reopen the case of the possible child abuse . . . ." The court informed her that that matter was not before the court that day and declined to do so, informing mother that "I don't open investigations. That is not the purview of this Court." The court encouraged mother to address the evidence with an investigative agency.

In February 2019, mother filed what appears to be a random declaration that attached the emergency room medical report.

In May 2019, the findings and orders from the *October 10, 2018,* hearing were finalized.

In June 2019, mother filed a motion for reconsideration of the court's October 10, 2018 ruling on her RFO. The request was based on a new law that established a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence against the other

7

parent is detrimental to the child. Mother submitted a witness list that included the emergency room doctor from the April 3, 2018, visit. However, the court denied the motion without an evidentiary hearing because the motion was not based on any new facts or relevant law.

On July 30, 2019, mother appealed from a judgment after court trial, which is presumably the findings and orders from the October 18, 2018 hearing, which was finalized and signed by the court on May 31, 2019. This is one of the two appeals consolidated in this opinion.

Meanwhile, on August 15, 2019—the very week the custody schedule was to step up to give father more custody time—mother applied for a DVRO against father.[2] In response, on August 22, 2019, father filed a RFO seeking, among other things, admonitions from the court that mother comply with current orders and to declare mother a vexatious litigant.

On August 27, 2019, mother filed her own RFO seeking to curtail father's custody time. That same day, she opened a new child sexual abuse case with SSA, which was subsequently deemed unfounded.

The court denied both the restraining order and the parties' competing RFOs. The court made a specific adverse credibility finding against mother: "At the end of the day in consideration of everything that has been submitted, everything that has been discussed, I see this situation—specifically the domestic violence request—being mere subterfuge for the under[lying] custody and visitation disputes that exist and remain ongoing between the parties." "The Court finds that the testimony of [father] is more credible, convincing, compelling, and persuasive."

_____

[2]     Mother filed a request that we augment the record with her request for a DVRO filed August 15, 2019. Because this document was filed before the second notice of appeal in this case, we deemed it to be a request for judicial notice of that document. We grant the request.

8

At the same hearing, the court held a teleconference with the parties and minor's therapist, who stated she would not continue therapy with the minor under the current circumstances due to the conflict between the parents. The problem was, mother and father were giving her conflicting accounts of what was happening in the child's life. "It's not possible to treat a 4-year-old just by seeing the 4-year-old." She insisted that the parents needed to be in coparenting therapy—which they had theretofore refused—and needed a case manager. The court appointed a case manager and a coparenting therapist. Consistent with Dr. Grossman's recommendation, the court also ordered father to take a parenting course. Mother claimed to be already enrolled in behavioral cognitive therapy as recommended by Dr. Grossman. Mother's second appeal, consolidated here, is from the court's orders at this hearing.

## DISCUSSION

Mother raises numerous issues on appeal, all of which claim the trial court abused its discretion. When we review a court's discretionary decision, we give the court wide latitude. That is because, by its very nature, a discretionary decision often permits many different outcomes. If there is any colorable argument supporting the court's decision, we will not reverse. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 ["Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered].) An appeal is not an opportunity to relitigate every issue at trial, but instead a forum for correcting errors. As a result of this posture, it is the obligation of the appellant to set forth all evidence supporting the court's order. Otherwise we cannot determine whether the court erred. Mother has not done that here. Instead, she has treated her brief as an opportunity to cherry pick the evidence in her favor and tell *her* version of events. Moreover, when claiming an abuse of discretion, it is not enough to simply assert it; an appellant must demonstrate it by citations to the

9

evidence and to authorities, together with a reasoned argument. In many cases, she failed to do that as well. As a result of both shortcomings, we would normally find she had waived her arguments on appeal. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) However, to promote finality in this contentious case, we will address the merits of her claims.

Another foundational aspect of an appeal that mother has largely ignored is that we only reverse for errors that are prejudicial. (Cal. Const., art. VI, § 13.) "No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown." (Code Civ. Proc., § 475.)

I.

Mother first claims the trial court abused its discretion "when it denied [mother's] request for child therapy and failed to review collateral sources of evidence prior to making child custody orders." Within this "issue," mother asserts a few different errors.

She contends that at the October 10, 2018 hearing, which was the trial on her first RFO, the court "presumably . . . had not read either of the child custody reports" because the court admitted to receiving the 730 evaluation that morning and asked the parties for page numbers and what was recommended. We presume no such thing. The CCI had been completed in May of 2018. There is nothing in the record to suggest the court did not review it. Moreover, just because the court received Dr. Grossman's

10

evaluation the morning of the hearing does not mean it did not review the evaluation. And mother has not pointed to any prejudice. Based on our thorough review of Dr. Grossman's report, the court's custody orders of that day were well within its discretion and consistent with Dr. Grossman's report.

Mother also contends that at the October 24, 2018 hearing, the court abused its discretion "when it denied [mother's] request for a full evidentiary hearing after the Court[] greatly modified the 730 recommendation to ultimately almost immediate 50/50 instead of the progressive step-up place and doubled John's vacation time." The point of the October 24 hearing was to address the fact that mother concealed her plans to move to Seal Beach and change minor's school when custody arrangements were being made at the October 10 hearing. Mother does not explain what evidence she proffered that the court refused to consider. Presumably she is referring to her attempt at the hearing to "reopen the case of the possible child abuse." But the court was clearly correct in responding that the issue of child abuse was not before it at that hearing. That issue had already been litigated at the October 10 hearing in which the court declined to reduce father's custody time in response to mother's RFO. Mother had not filed any new requests for orders, modification, or reconsideration at the time of the October 24 hearing. The court acted well within its discretion.

Mother further contends the court abused its discretion when, at the September 12, 2019 hearing, "it denied [mother's] request for legal decisions regarding child therapy." It is unclear exactly what the claimed error is here. The court *did* order therapy, together with coparenting therapy and a case manager. Mother fails to explain what more the court was supposed to have done.

## II.

The next issue mother asserts is that the sanctions order was an abuse of discretion because it imposed an unreasonable financial burden on her and was based on

11

a violation of a nonexistent order. "Sanctions orders are committed to the trial court's discretion, which we review with deference." (*In re Marriage of Gutierrez* (2020) 48 Cal.App.5th 877, 882.)

We disagree that the sanctions order placed an unreasonable financial burden on mother. Family Code section 271, subdivision (a), provides, "[T]he court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed." We note there is an indication in the record that father's counsel subpoenaed financial documents from mother for this very purpose but mother refused to provide them. A court cannot review evidence mother refused to provide. In any event, the court established a payment plan for mother precisely in response to her claim that she only made $16,000 that year. There is nothing in the record to indicate that $40 per month is an unreasonable burden on mother.

As to mother's assertion that the court based the sanctions award, in part, on a nonexistent order, mother fails to demonstrate either error or prejudice. Father requested sanctions based on mother's noncompliance with multiple court orders. The primary orders that mother failed to comply with were the custody orders, when, during a two-month period, she refused to relinquish minor to father consistent with the custody order. Then, when the court reiterated that she was required to follow it, she *again* refused, requiring father to make yet another appearance to secure his custody time.

12

Plainly, the court was well within its discretion in sanctioning mother for failing to comply with those orders.

There were two additional bases upon which father sought sanctions. The first was mother's initial failure to pay Dr. Grossman, resulting in a delay of the 730 evaluation. The second was mother's failure to utilize Talking Parents, which is an online communication platform.

The record does not reveal any problem with the court using the failure to pay Dr. Grossman as a basis for the sanction. The court made the order and mother did not comply.

As to the alleged failure to utilize Talking Parents, father's counsel represented that the June 1, 2018 stipulation between the parties (which was signed by the court) required her to utilize that platform, which she failed to do. However, in our review of both the San Diego custody order and the June 1 order that modified it in certain respects, we find no requirement that mother utilize Talking Parents. The San Diego order required, "All non-emergency and non-time sensitive communications shall be in writing and sent by email (modified by Court)." "The parents shall use email to share information and for communication. Each parent shall respond to communications within 72 hours of receipt preferably using email or by phone if necessary (modified by Court)."[3] The June 1 stipulation reiterates that the San Diego order is in full effect except as modified in the stipulation, and the stipulation says nothing about communications. Thus, to the extent the court based the award of sanctions on mother's purported failure to comply with a previous order to utilize Talking Parents, the court would have erred.

But mother has not demonstrated that her alleged failure to utilize Talking Parents was the *actual* basis for the sanctions award. Based on the record on appeal, the court could well have *rejected* father's request to base sanctions on the failure to utilize

---

[3]     It is unclear in the record what "modified by Court" refers to.

13

Talking Parents. "Under well-established rules of appellate procedure, [mother], as the appellant, has the burden to provide an adequate record on appeal and to affirmatively show error." (*In re Marriage of Deal* (2020) 45 Cal.App.5th 613, 622.) Absent that showing, the "judgment or order of [the] lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

At the October 10, 2018 hearing, the court was provided with specific attorney fee entries that it then utilized to arrive at the final sanctions award. Mother did not include that evidence in the record. As a result, we cannot determine to what extent, if any, the sanctions award was based on mother's failure to use Talking Parents. Father's counsel requested an award of $10,517 based on *all* of counsel's time expended on *all* of mother's asserted violations, and inclusive of the earlier advance of $2,500. The court, however, awarded only $7,399.50, also inclusive of the prior $2,500, amounting to a reduction of $3,117.50 from father's request. Accordingly, we have no basis to presume the court erred, or if it did, that the error was prejudicial. Accordingly, we affirm the sanctions award.

III.

Next, mother contends the court "abused its discretion when it denied [mother's] request to review [minor's] medical records." There is a certain irony to this argument, in that, at the initial hearing, the trial court chided mother for *not* providing those records. The court wanted them. Mother did not provide them. Other than that, mother does not point to any hearing in which mother proffered the medical records and the court refused to admit them. Based on our own review of the record, the only hearing in which the court refused to consider the medical records was the October 24, 2018 hearing, where the court was resolving father's RFO based on mother's concealment of

14

her intent to move to north Orange County and unilaterally change minor's school.  The medical records plainly were not relevant at that hearing.

Nor, in any event, do we see any prejudice.  Dr. Grossman reviewed the medical records in her report and stated their contents—namely, that minor had bruises on his knees and he stated his father hit him.  Dr. Grossman's report was in evidence before the court at the October 10, 2018 hearing, wherein the court resolved mother's request to alter the custody order based on her allegations of child abuse.  Thus the court already had that information at all relevant times.

IV.

Next, mother contends the court "abused its discretion when it refused live testimony and did not set [a] modification hearing in September."  Mother has not explained what evidence the court refused to hear.  The court *did* hold an evidentiary hearing in September 2019 and heard testimony from several witnesses.  Further, it admitted *all* evidence that mother proffered in connection with her request for a DVRO.  We see no abuse of discretion.

V.

Next, mother contends the court "abused its discretion when it modified the child custody orders on ex-parte requests without any evidence of imminent harm on October 24, 2018."  According to mother, the ex parte request "did not allege recent incidents showing immediate harm to [minor]" and thus "did not meet one procedural requirement established by California Rule of Court Rule 5.151(d)(5) regarding ex parte custody requests and therefore, should have been summarily denied."

Family Code section 3064 provides, "(a) The court shall refrain from making an order granting or modifying a custody order on an ex parte basis unless there has been a showing of immediate harm to the child or immediate risk that the child will

15

be removed from the State of California. [¶] (b) 'Immediate harm to the child' includes, *but is not limited to*, the following: [¶] (1) Having a parent who has committed acts of domestic violence, where the court determines that the acts of domestic violence are of recent origin or are a part of a demonstrated and continuing pattern of acts of domestic violence. [¶] (2) Sexual abuse of the child, where the court determines that the acts of sexual abuse are of recent origin or are a part of a demonstrated and continuing pattern of acts of sexual abuse."

Father alleged that mother had changed minor's school without consulting him and in violation of a court order. Moreover, father alleged that mother's move would require minor to be in the car for several hours per day on multiple days per week. The potential disruption to minor's routine was arguably a sufficient basis upon which to file an ex parte motion. Regardless, we fail to see any prejudice from the court holding an ex parte hearing instead of a noticed motion. Mother has not suggested there is any relevant evidence that she would have proffered but for the shortened time frame.

## VI.

Next, mother contends the court "abused its discretion when it denied [mother's] DVRO relating to prior DVRO denial." She cites four cases that have no apparent application to this case and makes no effort to explain what she means or how the court abused its discretion. Accordingly, we find none.

## VII.

Lastly, mother contends the court harbored "implied bias against [mother] when it made order that this case specifically deals with Family Code 3027.1 on October 10 2018 [*sic*] and accused [mother] of subterfuge." We find no evidence of bias against mother. At the October 10, 2018 hearing, father expressed concern about ordering minor to therapy because of the possibility that mother would use it to manufacture a claim

16

against him.  In response to that concern, the court stated, "I'm going to read this into the record because I want the record to reflect that the Court is admonishing *both sides*, whoever raises false allegations of child abuse in the future:  [¶]  Family Code Section 3027.1 specifically deals with this situation."  (Italics added.)  The court proceeded to read into the record Family Code section 3027.1, subdivision (a), which states, "If a court determines, based on the investigation described in Section 3027 or other evidence presented to it, that an accusation of child abuse or neglect made during a child custody proceeding is false and the person making the accusation knew it to be false at the time the accusation was made, the court may impose reasonable money sanctions, not to exceed all costs incurred by the party accused as a direct result of defending the accusation, and reasonable attorney's fees incurred in recovering the sanctions, against the person making the accusation."  The court then solicited confirmations from *both* parties that they understood the consequences of a false report.

This was not evidence of bias.  The court was simply impressing on *both sides* the gravity of a child abuse allegation to ensure that neither party would make false claims to gain a custody advantage.

Mother also contends the court demonstrated bias in September 2019 when it found that mother's DVRO request was a mere subterfuge for gaining a custody advantage.  That was not evidence of improper bias.  That was a finding after an evidentiary hearing.  The court simply found she was being dishonest.  Mother makes no effort to challenge the evidence supporting that finding on appeal.  Courts are properly biased against dishonesty.

17

DISPOSITION

The orders are affirmed.  Mother shall bear her own costs on appeal.


                                    IKOLA, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.